PER CURIAM.
The salient issue to be resolved is whether or not the circuit court properly found that appellee fell within the terms of Section 11, Chapter 57-362, Laws of Florida (the Bulkhead Act). After fully reviewing the briefs and record, we conclude that the trial judge correctly resolved this issue. The scholarly opinion of the learned trial judge is adopted as the opinion of this court:
“JUDGMENT
“This cause was instituted as a result of the United States District Court for the Southern District of Florida declining to pass upon questions of local law material to the rights of the parties, and the decision of this court is strictly limited to those issues properly presented to and necessarily decided by this court.
“Plaintiff [appellee] is the owner of lands within the corporate limits of the Village of North Palm Beach which border upon Lake Worth and the Atlantic Ocean.
“There have been duly established bulkhead lines opposite the lands owned by plaintiff.
“Plaintiff desires to fill the area between the high water mark and the bulkhead line, and seeks an adjudication of its rights with respect to such filling and, specifically, a declaration that it has the right to construct such fill and either that it is not required to obtain a permit from the trustees [appellant] before making such fill or, in the alternative, for a mandatory injunction requiring the issuance by the trustees of such permit.
“Before discussing the right of the plaintiff to fill the area in question, it is well to point out that certain related and collateral issues are not before the court and may not properly be adjudicated in this proceeding.
“There is not presented to this court, even if it had jurisdiction, any question of *382 the right of the plaintiff to secure the issuance of any permits required by the United States as a condition precedent to the lawful filling of the area involved. Nor is there presented to this court, even if it had jurisdiction, the question of any authority of the trustees to consult and advise with any agency of the federal government with respect to decisions to be made by such federal agency to the extent that, in so doing, the trustees act as adviser to the federal agency as distinguished from the exercise of any power or duty as an agency of the State of Florida.
“The pleadings in this case do not present any issue as to the right of the plaintiff to dredge fill material from bottoms outside the bulkhead line for the purpose of filling the area within the bulkhead line. While there are some allegations and stipulations of fact with regard to the purchase of fill material from the trustees, no relief is prayed with regard to the extent and nature of any right of the plaintiff to dredge material from outside the bulkhead line.
“The issues presented to this court are thus restricted to the abstract right of the plaintiff to fill the area in question and the right to demand a permit from the trustees, if one is necessary.
“In order to solve this problem, it is necessary to study the history of the law of Florida on this subject. Originally, the common law controlled, and under the common law the title to the bottoms of all navigable waters was vested in the sovereign for the use of the people subject to the right of the sovereign to convey title to specified areas to private ownership when in the public interest.
“In 1921, the legislature enacted Chapter 8537, Laws of Florida, commonly known as the Butler Act, and plaintiff derives its rights from that statute. The Butler Act was obviously enacted for the purpose of encouraging the development of waterfront property in Florida. The court judicially knows that much upland in Florida bordering upon navigable waters is very low and marshy. When the Butler Act was adopted, Florida was much more sparsely populated than today, and was striving to attract tourists, investors, new citizens and industries to the state. In enacting the Butler Act, the legislature found:
“ ‘Whereas, it is for the benefit of the state of Florida that water front property be improved and developed; and
“ ‘Whereas, the state being the proprietor of all submerged lands and water privileges within its boundaries, which prevents the riparian owners from improving their water lots: . . . ’
“Based upon these findings, the Butler Act provides:
“ 'The state, subject to any inalienable trust under which the state holds all submerged lands and water privileges within its boundaries, divests itself of all rights, title and interest to all lands covered by water lying in front of any tract of land owned by the United States or by any person, natural or artificial, or by any municipality, county or governmental corporation under the laws of Florida, lying upon any navigable stream or bay of the sea or harbor, as far as to the edge of the channel; and vests the full title to the same, subject to said trust in and to the riparian proprietors, giving them the full right and privilege to build wharves into streams or waters of the bay or harbor as far as may be necessary to affect the purposes described, and to fill up from the shore, bank or beach as far as may be desired, not obstructing the channel, . . . provided, that the grant herein made shall apply to and affect only those submerged lands which have been, or may be hereafter, actually bulkheaded, filled in, or permanently improved, continuously, from high water mark in the direction of the channel, . . . and shall in no wise affect such *383 submerged lands until actually filled in or permanently improved.’
“It will be observed that the public interest in public bottoms was not wholly ignored by the Butler Act, although apparently no consideration was given to ecology as presently understood. However, limited protection was given to the conservation and protection of natural resources such as oyster bars, and the public right of boating, bathing and fishing until filling actually took place, and the right to fill and thus acquire title did not extend to ‘beaches customarily used by the public as bathing beaches.’
“The Butler Act was constitutionally valid. State ex rel. Buford, Atty. Gen. v. City of Tampa et al., 88 Fla. 196, 102 So. 336.
“Apparently the Butler Act served its purpose. The development of waterfront property was phenomenal, and by 1957 had reached the point where the public interest required limitations upon the extent to which upland owners could add to their land by filling. Consequently, Chapter 57-362, Laws of Florida, was enacted. This statute makes substantial changes in the law relating to the filling of the bottoms of navigable waters so as to create dry land. The rights of the parties depend upon the proper construction of this statute.
“It is clear, and the parties agree, that the Butler Act did not create any vested interest in the owners of upland to the bottoms adjoining their upland prior to actual filling. But the Butler Act did operate to vest title to the land created by the lawful filling of such bottoms when the filling became a fact accomplished. And the Butler Act did not put any time limit upon the filling being accomplished.
“Since the Butler Act did not create any vested interest prior to actual filling, it follows that the legislature had plenary power to repeal or amend this statute insofar as it applied to unfilled bottoms.
“Chapter 57-362 was designed to, and did, withdraw the blanket right of upland owners to acquire title to adjoining bottoms between the high water line and the channel of adjacent waters. This statute (and later amendments not material here) provided much greater protection to the public enjoyment of the waters over these bottoms and much greater protection of the ecology which would be affected by filling. The need for these changes and, perhaps, even greater restrictions upon the exploitation of these public resources are not, and cannot successfully be, challenged.
“The enactment of Chapter 57-362 necessarily resulted in the curtailment of the potential development of much waterfront property and, had it been given immediate and universal application, obviously would have resulted in many hardships. In order to minimize these hardships, Chapter 57-362 contains provisions restricting its operation, only one of which is applicable here [1]:
“‘Section 11. The provisions of this act shall not affect or apply to the construction of islands or the extension or addition to existing lands or islands bordering on or being in the navigable waters as defined in section 253.12 herein of the state which was commenced or application for permit to fill which was filed with the United States corps of engineers prior to the effective date of this act as to lands or bottoms lying between ordinary high water mark and a bulkhead line heretofore established by any county, city or other political subdivision of the state by official action of its governing body.’ ”
“The key to the problem before the court is the proper construction of this *384 language. The phrase, ‘the provisions of this act,’ clearly includes the provision for the repeal of the Butler Act. Therefore, the Butler Act remains in force as to ‘the construction of islands or the extension or addition to existing lands or islands’ as specified in this paragraph. The conditions specified which preserve the Butler Act as to certain bottoms are two in number, one in the alternative and one specific:
“1. Prior to June 11, 1957, the effective date of Chapter 57-362, the filling must have ‘commenced’ or ‘application for permit to fill’ must have been ‘filed’ with the United States Corps of Engineers.
“2. The area affected must be between ordinary high water mark and a bulkhead line ‘heretofore’ (that is, before June 11, 1957) established.
“The language of the statutes is abundantly clear. The Butler Act is unrepealed and, therefore, in full force and effect as to ‘the extension or addition to existing lands’ with respect to which the foregoing conditions are shown to have existed June 11, 1957. Insofar as the State of Florida is concerned, it makes no difference whether a permit to fill was ever issued by the corps of engineers or the length of the permit, if issued. If application to fill a particular described parcel of bottoms had been filed before June 11, 1957, and if that parcel of bottoms were within a bulkhead line theretofore lawfully established, that particular area of bottoms was still subject to the Butler Act and was not subject to Chapter 57-362 just as clearly as if described by metes and bounds and excepted from the operation of Chapter 57-362.
“The conclusion is inescapable that the plaintiff had the right to fill any bottoms belonging to it which, on June 11, 1957, were between the high water mark and bulkhead lines theretofore established by competent public authorities and with respect to which filling had been commenced or an application for permit to fill had been filed with the United States Corps of Engineers.
“Since by admission of the parties the bottoms here involved come within these conditions [2], the plaintiff still has the right under the Butler Act to make the desired fill and thereby acquire title to the filled land, and the trustees have no authority by virtue of their ownership of the public bottoms to require that the plaintiff secure from them any permit before engaging in its filling operations.
“As above stated, there is not presented by the pleadings in this case any question as to the source of the fill material to be used by the plaintiff in its filling operations, and the court makes no adjudication with respect thereto.
“The trustees, by affirmative defense, have sought to interpose a rule adopted June 26, 1962, by the trustees, as follows:
“‘200-2.11 Limitation defined for exemption under Section 253.0013(2) FS. —Exemption set forth in Section 253.-0013(2) F.S. are operative only for (1) the unexpired period of the U S Army Corps of Engineers’ permit in effect June 11, 1957, or (2) the initial permit period for which the U S Army Corps of Engineers granted permit pursuant to application pending June 11, 1957, and such exemptions will not be subject to extension.’
“The trustees have no authority to adopt rules inconsistent with law, and the quoted rule is inconsistent with the law as heretofore announced. While this court has the highest respect for the personnel of the trustees, it cannot subordinate the clear intent to the statute to an obviously inconsistent rule.
“The trustees suggest that Section 11, Article X of the constitution may have *385 some effect upon this problem, but the court is of the opinion that the legislative finding in 1921 quoted above and heretofore held to be constitutional under the Constitution of 1885, to the limited extent that it is carried forward by present statutes, is not in violation of the Constitution of 1968.
“All property and all property rights are held subject to reasonable regulation in the public interest. Numerous statutes have been enacted for the protection of the ecology of the state. Nothing in this judgment is a determination of the applicability of any statute regulating and protecting the ecology of the state or requiring permits before conducting activities which may be potentially dangerous to the ecology. Any such statutes, if applicable, would be binding upon the plaintiff to the same degree and subject to the same limitations that would exist if the plaintiff had acquired by lawful purchase from the trustees the title to the bottoms lying between the high water mark on plaintiff’s uplands and the adjoining bulkhead lines prior to the enactment of such statutes.
“There seems to be some question, not litigated here, as to a policy of the corps of engineers requiring the approval of the trustees before granting any permit for the filling of bottoms such as those here involved. To the extent that the trustees act as advisers on ecology to the federal authorities they function under federal law, and the propriety of their actions is not in issue here. However, the trustees as state officers have no authority to refuse to approve a permit proposed to be issued by the corps of engineers because of any claim of state title to the bottoms here involved. To this extent, the plaintiff is entitled to an injunction, if one be needed.
“Out of respect for a coordinate branch of government, the court will assume that the trustees will obey the law as pronounced by this court without the necessity of a formal writ, and no injunction will actually be issued unless it be made to appear that one is necessary.”
The judgment appealed is AFFIRMED.
RAWLS, Acting C. J., and MILLS and SMITH, JJ., concur.

“1. It is interesting to observe that while Section 9 of Chapter 67-862 purports to repeal § 271.01, Florida Statutes (the basic portion of the Butler Act), that repeal is followed by § 11 quoted here, so that § 11 clearly controls.

“2. By reason of being the subject of an application for permit to fill filed with the U. S. Corps of Engineers.